Concepción Morales, etc., Appellant, *v.* Registrar of Property of Guayama, Respondent.

No. 952. Submitted May 25, 1935.—Decided June 14, 1935.

*C. Domínguez Rubio* for appellant. The registrar appeared by brief.

Mr. Justice Córdova Dávila delivered the opinion of the court.

Concepción Morales, widow of Fernández, sought to record in the registry of property the dominion title to two rural properties declared in her favor by the District Court of Guayama. The two properties appear marked with the letters "A" and "B." The title of the appellant to these real properties originated in the partition of the estate of her deceased spouse, Manuel Fernández Betancourt. In the partition of said estate, there was allotted to the appellant a 3/7 undivided interest in a piece of property containing 25.75 acres *(cuerdas)* which her husband had acquired from the brothers Marcelino, Roque, and Hermenegildo Ber-

múdez López. This property, owned in common with Gregorio Santos, was subsequently divided, an eleven-acre parcel being allotted to the widow and the remainder to the other co-owner, Gregorio Santos. This eleven-acre parcel is the one that appears marked with the letter "A." The other property, which is marked with the letter "B," is composed of six acres of land and was also acquired in the partition of the said estate.

The registrar in separate decisions denied the record sought on different dates, for failure to set forth the names of the lawful successors of Fernández Betancourt, or to summon them personally or by publication, if their whereabouts was unknown. The appellant maintains that the proper procedure was followed in the dominion title proceeding, and that the summoning of the persons, to which the registrar refers, is neither essential nor necessary in order that said proceeding may have legal validity. Upon this point hinges the entire controversy in this case, which both parties maintain with lively interest, in their extensive and elaborated briefs. The question, therefore, to be decided is whether the names of the successors in interest of Manuel Fernández Betancourt should have been set forth in the order of the court, as former owners of the property, and whether they themselves should have been summoned as a prerequisite for the entering of the said order.

Section 395 of the Mortgage Law reads in its pertinent part as follows:

"Any owner of property having no written title of ownership whatever be the period of the acquisition, may record such ownership upon proving it under the following formalities:

"1. He shall submit to the judge of the court of first instance of the judicial district in which the property is situated, or to the one of the district in which the larger portion thereof is situated if the estate be located in more than one district, a statement of the manner in which he acquired it and any legal proof of such acquisition which he may have to offer, and praying that, after citation of the person from whom the property may have been acquired, or of his predeces-

sor in interest, and of the representative of the department of public prosecution, such evidence be admitted and a declaration of his rights made.

"2. The judge shall refer this petition to the representatives of the department of public prosecution, shall cite the person from whom the property was acquired or his successor in interest, if known, and the persons who may have any property right in said real property; . . . ."

According to the appellant, where an heir seeks to have declared in his favor the dominion title to property acquired by inheritance, there should be summoned the grantors of the predecessor in interest and also the co-owners of the inheritance as co-participants but not as former owners. The appellant argues that the children are subrogated in the place of the father and constitute a continuation of his personality which can not be extended in order to obviate or evade the summoning of the former owner. So it is, indeed, and for this reason we think, in agreement with the appellant, that as the law requires the summoning of the person from whom the property was acquired or of his successor in interest, the person from whom the ancestor (*causante de la herencia*) acquired should be summoned. This does not mean, however, that the other coheirs should not be summoned as the immediate predecessors in interest (*causantes*) of the heir who instituted the proceedings to establish ownership.

Commenting on section 404 of the Spanish Mortgage Law, equivalent to section 395 of our law, Galindo and Escosura (vol. 4, p. 659) say:

"It has also been asked whether the first rule is applicable to the case where, after the death of the person from whom the property is derived, an heir of such person seeks a declaration of ownership in his favor. Although it is possible that the lawmaker, in drafting this section, did not have this case particularly in mind, it seems to us to be beyond dispute that in addition to the summoning of all the coheirs, the person from whom the deceased acquired, if known, should be cited. If the petitioner should be the sole heir, it will be

sufficient to summon the district attorney, and to publish the edicts, as provided in the second rule, if the person from whom the deceased acquired the property is also unknown.''

The plaintiff agrees that the coheirs should be summoned as former co-owners of the property. She does not agree, however, that they must be summoned as successors in interest. The partition of an inheritance, according to the civil law commentators, constitutes an act of alienation of property. In making the partition of the estate, the heirs mutually cede undivided interests which extended to the entire estate. As Manresa says, each heir conveys, in reality, to his coheirs such undivided interest as he had in the property allotted to them in the partition, and obtains, in turn, from all the others, such interest as they held in the things allotted to him. Perhaps it is in this character of immediate predeces-sor in interest of the petitioner, rather than as successor in interest of the person from whom the inheritance is derived, that each one of the heirs should be summoned.

The respondent thinks that just as the person who sold to the predecessor in interest is a former owner, so is each heir in regard to all the others, once the inheritance is divided. Refuting the arguments of the appellant, the regis-trar in his brief says:

''Now, then, even though the registrar agrees with the appellant as to the necessity of summoning the former owner, grantor of the predecessor in interest, he can not, however, agree that the coheirs are not also former owners of the property, and entitled to the sum-mons. The appellant makes a very subtle distinction between the concepts *heirs* and *former owners*. The person who sold to the pre-decessor in interest is a former owner in relation to all the successors, but each heir is a former owner in relation to all his coheirs, once the inheritance is divided. By the death of the predecessor in interest, the surviving spouse and the lawful successors became tenants in com-mon. The partition terminated the community, and each heir, the surviving spouse included, acquired his or her share in the inheritance or ganancial property, to the exclusion of all the other co-owners. When the community ceases, all the co-owners reciprocally convey their interests in the separate and exclusive property of each par-

ticipant, and they become, mutually, vendors among themselves, or, more correctly expressed, parties to an exchange of property (*permutantes*). Partition involves such reciprocal giving between the grantors that all are mutually bound to give a warranty against eviction, just as in the case of ordinary purchasers, and it is the general practice to set forth this obligation as an express provision in the deed of partition.

"*      *      *      *      *      *      *

"The appellant also makes a subtle distinction between an heir and the surviving spouse. Of course, the registrar does not confuse their respective status, although it is true that the surviving spouse succeeds the predecessor in interest as a usufructuary. But for the purposes of the required summons in the prosecution of a dominion title proceeding, what difference is there between the position of the heirs as regards each other and the relation of the heirs to the surviving spouse, in regard to the property which, after the dissolution of the conjugal partnership, is divided among them all, some acquiring by hereditary title and the other conjugal partner? How can it be logically maintained that when one of the heirs institutes a dominion title proceeding in regard to property so acquired, he has to summon all the other heirs with whom he jointly succeeded to the inheritance, but the surviving spouse, on the contrary, is not obliged to do so? Before the partition, the heirs among themselves were as much co-owners of the whole estate as was the surviving spouse. And if the heirs, by virtue of the partition, become mutually former owners, the surviving spouse is not less so. Under like circumstances, the law can not be applied differently."

The commentator Manresa, speaking in general terms of partition, expresses himself thus:

"Is the division or partition of an inheritance an alienation of property, or simply a declaratory act?

"Under the Roman law, partition was an act of conveyance of property, a true alienation, and thus is also maintained by the majority of text writers.

"Division, says Losana, is essentially an act of conveyance or change of ownership. The community represents only a merely abstract property right which is made manifest in the power which indeterminately belongs to all the participants, over each of the things held in common. If any part thereof is alienated, the grantee really has for immediate predecessors in interest all the coheirs. In mak-

ing the division, and by virtue thereof, each heir cedes, in reality, to his coparticipants the undivided interest which he held in the property allotted to them in the partition, and obtains, in turn from all the others their interests in the things that are awarded to him.

"If two heirs, A and B, are called to a succession and there are two parcels of land, a vegetable garden and an olive grove, each one of these parcels belongs in its entirety to both heirs. The proprietary entity is represented by A and B. When the partition is made and the olive grove is alloted to A and the garden to B, B cedes to A his rights in the olive grove and A cedes to B his rights in the garden, from which it is evident that there has been a new transfer, an acquisition distinct and apart from the first, which on the death of the ancestor, took place between him and his heirs, and thus in the division B stands as the immediate grantor of A, and A as that of B. The act simulates a true exchange." 7 Manresa, pp. 661, 662.

"As we said under the caption *general principles,* the partition of an inheritance really involves an act of conveyance of property." Id., p. 794.

The appellant says that she acquired the property the object of the dominion title proceeding, as conjugal property and not by inheritance, and that the successors of Manuél Fernández Betancourt, are not coheirs with the surviving spouse. Without stopping to consider the usufructuary share to which the surviving spouse is entitled, and granting, for the sake of argument, that the successors of Fernández Betancourt are not coheirs with his widow, it would always result that all were co-owners up to the moment of the division of the property. The conjugal partnership ceases with the death of either of the spouses, but the properties become provisionally merged until the time of the division. Meanwhile, there is a common estate in which all the participants have an interest, among whom is the widow with one-half interest in the conjugal property forming part of the estate and the usufructuary share provided by law. The estate, therefore, until a partition takes place, remains practically in a state of community. "The division of property held in common operates as a conveyance, and not a declaration of ownership, because by that act the ownership

rights of the co-owner are in no wise altered upon the division of the common property among the parties, but they are simply conveyed and consolidated, changing finally, not the essence but rather the form of the real right of ownership." 3 Manresa, (3d ed.), p. 527.

We believe that the widow stands, in regard to the conveyance of the property, in the same position as the heirs. In this respect there is no difference whatever between them, as all are owners of the common property. Let us suppose, for example, that neither of the spouses has died but that the conjugal partnership has become extinguished because the marriage ties have been dissolved, and that after the property is partitioned, one of the spouses institutes a dominion title proceeding in regard to a piece of real property that was awarded to him or her and formerly belonged to the conjugal partnership. Would the person instituting the proceeding be bound to summon the other spouse as immediate predecessor in interest? It might be so, in the same way that in the case of an inheritance all the other coheirs must be summoned, if the party who institutes the dominion title proceeding is an heir. In the case at bar, the fact that the partnership was dissolved by the death of one of the spouses makes no difference whatever. If the predecessor in interest was a co-owner, his heirs also continue to be so until the property has been divided.

In the cases of *Cruz* v. *Santiago*, 24 P.R.R. 100, 303; *Taboada* v. *Registrar of Guayama*, 26 P.R.R. 600, and *Cancel* v. *Registrar of San Juan*, 28 P.R.R. 862, it was held that in dominion title proceedings instituted by one of the heirs, all the other heirs should be summoned, and they are designated by the name of successors in interest. Whatever may be the meaning and scope of the term "successor in interest," whether it refers to the person holding rights derived from the person who conveyed the property to the ancestor or to the successors of the latter, the fact is that this court has maintained in various decisions that the heirs

must be summoned. In the case of *Cancel* v. *Registrar of San Juan, supra,* this court expressed itself as follows:

"Although the registrars are not authorized to review the grounds on which orders of the courts are based, nor to set up their opinions regarding the legality of these grounds in support of their refusals to record said orders in the registry, as the appellant alleges and as we held in the case of *Tuboada* v. *Registrar of Guayama,* 26 P.R.R. 600, wherein we referred in this connection to the case of *Medina* v. *The Registrar,* 19 P.R.R. 964, and cases therein cited; yet, as we also held in the same case, this does not mean that registrars have no authority to refuse to record the said orders when they do not show that all the requirements of law have been complied with; and inasmuch as, according to article 395 of the Mortgage Law, in a petition for a dominion title judgment it should be prayed that the person from whom the property was acquired, or his successors, be summoned, Gordiano Cancel, from whom the parcel of ten acres was acquired, having died, it was necessary to ask that his successors be summoned and therefore the dominion title judgment should show that they were summoned, it not being sufficient to state that the former owners were summoned, for after Gordiano Cancel died, his heirs or successors had to be summoned and this fact must appear from the judgment; therefore, as this fact was not shown, the registrar acted correctly in refusing to record the parcel of ten acres."

There is no reason whatever for modifying the doctrine laid down by this court in the decisions above cited, and although in the instant case the dominion title proceeding was instituted by the widow, who is an heir solely in the usufructuary share, we think that there should also have been summoned Manuel Fernández Betancourt's successors, who, with the widow, owned the common property up to the moment of its division.

The decisions appealed from must be affirmed.